UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SAMUEL M. CANYON | * | CIVIL ACTION |
| VERSUS | * | NO. 25-1721 |
| ENTERGY OPERATIONS, INC. | * | SECTION "H" (2) |

### ORDER AND REASONS

Pending before me is a Motion for Leave to File Second Amended Complaint filed by Plaintiff Samuel M. Canyon.  ECF No. 31.  Defendant Entergy Operations, Inc. timely filed an Opposition Memorandum.  ECF No. 38.  Plaintiff did not file a Reply Memorandum.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion for Leave to File Second Amended Complaint is GRANTED for the reasons stated herein.

### I.    BACKGROUND

Plaintiff Samuel Canyon filed suit in state court alleging that Defendant Entergy Operations, Inc. terminated his employment as a supervisor in its Waterford 3 radiation protection department in violation of the Louisiana Environmental Whistleblower Statute ("LEWA"), LA. REV. STAT. § 30:2027.  ECF No. 1-2 ¶¶ 4-13, 17.  Plaintiff asserts that he raised concerns about radiological and environmental safety between October 2023 and August 2024 by reporting violations of plant procedures including adequacy of air samples, unqualified workers, and falsification of records.  *Id.* ¶ 6.  He also alleges that he reported "multiple environmental and public safety violations" including unmonitored release of radioactive water, use of radiation

1

detection equipment by unqualified personnel, and a chilled work environment that discouraged the reports of adverse conditions. *Id.* ¶¶ 8-9. During an April 2, 2025, meeting, Plaintiff raised his concerns with Defendant and the U.S. Nuclear Regulatory Commission ("NRC"), shortly after which he was placed on administrative leave and then terminated on May 19, 2025. *Id.* ¶¶ 10-11.

Defendant filed Rule 12(b)(6) motion, arguing that Plaintiff's claims were preempted by the Atomic Energy Act of 1954. ECF No. 11. After a thorough review of Plaintiff's allegations, Judge Milazzo found that all of the allegations related to radiological safety, not simply environmental and public safety concerns. ECF No. 21 at 5-6. For that reason, Judge Milazzo granted Defendant's motion as preempted by federal law. *Id.* at 6. Rather than dismiss the case outright, Judge Milazzo gave Plaintiff 20 days to file an amended complaint to allege claims arising in categories of protected activity beyond U.S. Nuclear Regulatory Commission jurisdiction. *Id.*

Plaintiff timely filed a First Amended Complaint. ECF No. 22. In response, Defendant filed a motion to dismiss. ECF No. 23. Defendant argues that Plaintiff failed to remedy the deficiencies identified in his original complaint (i.e., the amended complaint does not identify any specific environmental law, rule or regulation allegedly violated nor do the reports forming the basis for the underlying protected activity) and instead again raises radiological issues that fall within exclusive federal jurisdiction. ECF No. 23-3 at 3-11. Defendant also asserts that Plaintiff's new allegations contradict the allegations of his prior complaint. *Id.* at 11.

## II.    **THE PENDING MOTION**

In response to Defendant's motion to dismiss, Plaintiff has filed this Motion for Leave to File Second Amended Complaint to clarify the specific Louisiana environmental statutes implicated in Plaintiff's claims and further delineate the non-radiological basis of the alleged environmental violations. ECF No. 31; No. 31-1 at 2. Plaintiff asserts that the Amended

Complaint cures the identified deficiencies by identifying "the Louisiana Environmental Quality Act, La. R.S. 30:2011 et seq." and specifically "LDEQ regulations under LAC Title 33."  ECF No. 31-1 at 2.

In Opposition, Defendant argues that the motion should be denied based on repeated failures to cure the identified deficiencies and futility.  ECF No. 36 at 1, 3.  Specifically, after Judge Milazzo granted Plaintiff 20 days within which to amend to cure the identified deficiencies, he was unable to do so and now seeks another chance to cure the same deficiencies highlighted by Defendant's second motion to dismiss.  *Id.* at 3-4.  Instead of identifying any specific environmental statute to support his claim, Defendant argues, Plaintiff simply cites to the entire Louisiana Environmental Quality Act and related regulations. *Id.* at 4.  Defendant also argues that Plaintiff's Amended Complaint is futile because all of the factual assertions implicate radiological concerns and the new allegations are inconsistent with the condition reports on which his claim is based. *Id.* at 4-5.

III.    **<u>APPLICABLE LAW AND ANALYSIS</u>**

Rule 15(a) of the Federal Rules of Civil Procedure applies when a party seeks leave to amend before expiration of the deadline for amendments, but when leave is sought *after* the scheduling order deadline for amendments has expired, the analysis is governed by Rule 16.[1]  As Plaintiff filed this motion for leave to amend before issuance of Scheduling Order, the request is governed by Rule 15(a) rather than the more stringent good cause requirements of Rule 16(b).

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so

---

[1] *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, *NA*, 315 F.3d 533, 535–36 (5th Cir. 2003) (holding that Rule 16(b) governs amendment of pleadings after expiration of the scheduling order deadline and only upon a showing of good cause will the more liberal standard of Rule 15(a) then apply).

requires."[2]  Although leave to amend is not automatic,[3] given Rule 15(a)(2)'s bias in favor of

granting leave to amend, a court "must possess a 'substantial reason' to deny a request."[4]  The five

relevant factors considered in determining whether leave to amend is proper or there is substantial

reason to deny the request are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure

to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and

(5) futility of the amendment.[5]  Denial of leave to amend is reviewed for abuse of discretion,[6] but

absent a "substantial reason," the court's discretion "is not broad enough to permit denial" of a

request for leave to amend.[7]

### 1.  Undue Delay

Rule 15(a)(2) does not itself impose a time limit on seeking leave to amend.[8]  A litigant's

failure to assert a claim as soon as he could have done so is properly a factor to be considered in

deciding whether to grant leave to amend.[9]  "Merely because a claim was not presented as

promptly as possible, however, does not vest the district court with authority to punish the

---

[2] Denial of leave to amend is reviewed for abuse of discretion.  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).  The term "discretion" in this context "may be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).  A district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility.  *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted).

[3] *Avatar Expl., Inc. v. Chevron U.S.A., Inc.,* 933 F.2d 314, 320 (5th Cir. 1991).

[4] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted); *accord. Mayeaux,* 376 F.3d at 425 (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling*, 234 F.3d at 872).

[5] *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. Jan. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Spicer*, 751 F.3d at 367 (citation omitted); *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014))).

[6] *Carroll*, 470 F.3d at 1174 (citation omitted).

[7] *Mayeaux*, 376 F.3d at 425 (citing *Martin's Herend Imps., Inc.*, 195 F.3d at 770; *Stripling*, 234 F.3d at 872).

[8] *See Smith*, 393 F.3d at 595 (citation omitted) (stating that Rule 15(a) does not impose a time limit "for permissive amendment"); *see also Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) ("Lacking a time limit or an outer bound on when amendment is permissible, [Rule 15(a)(2)] instructs courts to 'freely give leave to amend when justice so requires.'" (citation omitted)).

[9] *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982) (finding late assertion of claim acceptable when all other factors pointed in favor of movant, no pretrial order or pretrial conference had been held, and no evidence of bad faith).

litigant."[10] At some point, plaintiff's delay can be procedurally fatal.[11] In that situation, plaintiff must meet the burden of showing that the delay "was due to oversight, inadvertence, or excusable neglect."[12]

Further, "delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court."[13] Courts have found "undue delay" when a plaintiff knew the facts "all along" but waited over a year after the first amended complaint to seek leave to amend raising those facts.[14]

### 2. Bad Faith

The Fifth Circuit has defined bad faith generally as

> implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.[15]

Defendant does not assert bad faith.

### 3. Repeated Failures to Cure

The Fifth Circuit has affirmed denial of leave to amend where a party has been given multiple opportunities to cure a defect.[16] In this case, Plaintiff was provided with one 20-day

---

[10] *Id.*

[11] *Smith*, 393 F.3d at 595 (quoting *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)).

[12] *Id.* (citation omitted); *see also Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (per curiam) (citation omitted).

[13] *Mayeaux*, 376 F.3d at 427 (emphasis and citations omitted); *see also Flores v. Amazing Grace Primary Home Care, L.L.C.*, No. 24-40434, 2025 WL 832795, at *6 (5th Cir. Mar. 17, 2025) (per curiam) (finding no undue delay when amendment sought four months after defendants' first appearance and motion to amend (citation omitted)).

[14] *See, e.g.*, *C3PO Int'l, Ltd. v. DynCorp Int'l, L.L.C.*, 663 F. App'x 311, 314–15 (5th Cir. 2016) (affirming district court's decision).

[15] *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (quoting *Bond v. Broadway*, 607 So. 2d 865, 867 (La. Ct. App. 1992)).

[16] *See, e.g.*, *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir. 1998) (upholding district court's denial of 15(a) motion where plaintiffs had three prior opportunities to amend their complaint); *see also Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 808 (5th Cir. 2020) (finding district court's denial of leave to amend proper where litigation was pending for five years, plaintiff's deficiency was first identified over three years ago, and the court allowed three prior amended complaints); *St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (affirming denial

opportunity to cure the defect in his pleading.  In response to Defendant's motion to dismiss, Plaintiff now seeks a second opportunity to cure the defects.  While a party is not entitled to amend his complaint without limits and courts often deny leave to amend when a party has been given multiple opportunities to cure a defect,[17] a request to amend for a second time cannot be characterized as a *repeated* failure.[18]

### 4. Undue Prejudice

The Fifth Circuit and other courts have found prejudice when the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial.[19]  A defendant is prejudiced if an amendment would require that the defendant "reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court."[20]  Likewise, amendments that fundamentally alter the nature of the

---

of a motion for leave to amend where "[a]ppellants had several opportunities to state their best case"); *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (concluding that justice did not require allowing plaintiff an additional opportunity to amend); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566–67 (5th Cir. 2002) (affirming refusal to permit amendment after plaintiff had amended twice).

[17] *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (holding a district court did not abuse its discretion in denying the plaintiff leave to file a third amended complaint, particularly because the plaintiff did not expressly request the opportunity, the district court previously granted leave for the exact reason for which the plaintiff sought leave to amend, and amendment would be futile); *see also Landscape Images Ltd. v. IberiaBank Corp.*, No. 24-30181, 2024 WL 4457844, at *5 (5th Cir. Oct. 10, 2024) (affirming denial of leave to file second amended complaint where first amended complaint was nearly a carbon copy of original complaint and plaintiff failed to identify any additional facts that could overcome the futility of amendment).

[18] *Flores*, 2025 WL 832795, at *6 ("[T]his is merely a *second* amended complaint: while the first amended complaint may have failed to cure the prior pleading deficiency, it was not a 'repeated' failure." (emphasis in original)).

[19] *See Smith*, 393 F.3d at 594–96 (affirming denial of leave to amend based on undue delay and prejudice where amendment would add a new claim in the middle of trial after discovery had closed); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave to amend where the plaintiff filed the motion "on the eve of the discovery deadline"); *see also Ruby Slipper Cafe, LLC v. Belou*, No. 18-1548, 2018 WL 11179117, at *2 (E.D. La. July 3, 2018) (looking to whether the filing is within the court-imposed deadlines or would require the re-opening of discovery to assess undue delay and prejudice).

[20] *Smith*, 393 F.3d at 596 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)); *see also C3PO Int'l*, 663 F. App'x at 314 (denying leave to amend based on, among other things, prejudice because of pressing discovery and trial deadlines); *cf. Mayeaux*, 376 F.3d at 427 (distinguishing between amendments that propose alternative legal theories of recovery, which "generally should be permitted," and those that "fundamentally alter the nature of the case," which "may be denied if the circumstances warrant," and finding no abuse of discretion in denial of amendment that would have unduly prejudiced the original and proposed new defendants by allowing plaintiffs to

case or would force a party to re-urge the same arguments presented in previous dispositive motions[21] are considered prejudicial.[22]  While additional fees and costs incurred to respond may cause some prejudice, it does not constitute "undue" prejudice necessary to justify denial of a motion to amend.[23]

A court should generally allow the plaintiff leave to amend his complaint to correct the defect before dismissing a complaint.[24]  Given that the amendment seeks to elaborate on the factual basis of the claims rather than assert an entirely new claim that changes the nature of the case and allowing amendment would not require re-opening discovery or reconsidering dispositive motions, Defendant cannot establish undue delay nor prejudice as necessary to deny Plaintiffs an opportunity to amend.

### 5. Futility

Consideration of the futility factor requires the court to assess whether the amended complaint would survive a Rule 12(b)(6) motion (*i.e.*, whether it states a plausible claim for relief).[25]  The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*,

---

plead "a fundamentally different case with new causes of action and different parties" after the case had been pending for years and was nearing the close of extensive discovery).

[21] *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016).

[22] *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 467 & n.12 (5th Cir. 2012) (finding leave properly denied where proposed amendment was based on documents known to plaintiff for over a year and added new causes of action that would have "dramatically altered the subject matter of the suit at a late juncture . . . requir[ing] expansive [additional] discovery and litigation"); *Mayeaux,* 376 F.3d at 427–28 (finding the complaint would be "fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruct[ ] the case anew").

[23] *See, e.g.*, *Babin v. Caddo E. Ests. I, Ltd*., No. 10-896, 2012 WL 3310017, at *1 (E.D. La. Aug. 13, 2012) (granting motion to amend despite argued prejudice of additional costs because that is not sufficient to establish undue prejudice); *Richards' Realty Co., L.L.C. v. Paramount Disaster Recovery, Inc.,* No. 06-2396, 2008 WL 440325, at *3 (E.D. La. Feb. 8, 2008) (Vance, J.) (stating that continued expenditure of substantial litigation resources does not establish undue prejudice); *see also Adams v. Medtronic, Inc.*, No. 19-870, 2022 WL 3268506, at *3 (E.D. Tex. Aug. 10, 2022) (preparing additional discovery and re-deposing an unidentified number of witnesses is not "considerable delay and expense" as necessary to establish undue prejudice); *EnergyBill.com, L.L.C. v. Arcadis U.S., Inc.,* No. 21-00426, 2021 WL 9352581, at *3 (W.D. Tex. Dec. 9, 2021) (stating that cursory references to the increase in cost, complication and potential juror confusion are insufficient to demonstrate the kind of undue prejudice warranting denial of leave to amend at the early stage in proceedings (citing *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 599 (5th Cir. Nov. 1981))).

[24] *See, e.g., LaPorte Constr. Co., Inc., v. Bayshore Nat'l Bank of LaPorte*, 805 F.2d 1254, 1256 (5th Cir. 1986).

[25] *Marucci Sports,* 751 F.3d at 378 (quoting *Stripling,* 234 F.3d at 873).

556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (*i.e.*, the factual allegations must "be enough to raise a right to relief above the speculative level").[26] It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[27] If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[28]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief."[29]

The court must make its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true.[30] Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[31]

---

[26] *Twombly*, 550 U.S. at 555, 570.

[27] *Id.* at 557 (brackets in original) (citation omitted); *Iqbal*, 556 U.S. at 678 (citation omitted).

[28] *Iqbal,* 556 U.S. at 678 (citation omitted).

[29] *Id.* 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).

[30] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[31] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citations omitted); *see also Twombly*, 550 U.S. at 555 ("[The] obligation to provide the grounds of [ ] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations and internal quotation marks omitted)). When considering a Rule 12(b)(6) motion, the court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). Thus, it may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (same).

When considering a Rule 12(b)(6) motion to dismiss, "a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'"[32] But the court may also consider "outside" evidence—or facts beyond those complained of or judicially noticed—attached to a motion to dismiss or opposition when such documents are referred to in the plaintiff's complaint and central to the plaintiff's claims.[33] Consideration of these types of documents does not require converting the Rule 12(b)(6) motion into a Rule 56 motion as required by Rule 12(d).[34] And although the Fifth Circuit has not definitively addressed precisely what types of attachments may be considered in ruling on a Rule 12(b)(6) motion,[35] it is clear that not all attached documents are treated equally.[36]

A prima facie case of retaliation generally requires plaintiff to establish: (1) that he engaged in a protected activity; (2) that an adverse employment decision followed; and (3) that a causal

---

[32] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins*, 224 F.3d at 498).

[33] *Id.* (citations omitted); *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *3 (5th Cir. Dec. 16, 2024) (per curiam) (approving of district court's consideration of attachments to the complaint and defendants' motion to dismiss, finding defendant's communications about its vaccination policy and plaintiff's exemption requests and affidavits were referenced in and central to the complaint); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (approving of district court's consideration of insurance policy referred to in complaint and attached to motion to dismiss); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (approving of consideration of evidence regarding relationship between car dealership and car manufacturer).

[34] *See, e.g.*, *Tellabs*, 551 U.S. at 322 (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (citation omitted)); *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023) (noting that review is limited to the pleadings and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint (citing *Collins*, 224 F.3d at 498; *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))); *Wolcott*, 635 F.3d at 763 (stating a court may consider the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice (citation omitted)).

[35] *Favre v. Sharpe*, 117 F.4th 342, 344 n.1 (5th Cir. 2024) (avoiding issue of whether judicial notice of certain facts contained in documents attached to the motion to dismiss were properly considered because neither party objected to same); *Wood v. Bexar Cnty.*, No. 22-50888, 2023 WL 3563012, at *1 n.2 (5th Cir. May 19, 2023) (per curiam) (expressly not addressing whether court may properly consider affidavit attached to a motion to dismiss).

[36] *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440–41 (5th Cir. 2015) (distinguishing between contracts and similar documents attached to a complaint that will trump contradictory allegations from affidavits that do not control when in conflict with allegations in a complaint (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.2004); *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

connection between the two existed.[37] In this case, Plaintiff has asserted a retaliation claim under the LEWA, LA. REV. STAT. § 30:2027.[38]

To state an environmental whistleblower claim under LA. REV. STAT. § 30:2027, courts require a plaintiff to allege: (1) the employee acts in good faith;[39] (2) the employee reports, or threatens to report, a violation; (3) the employee reasonably believes the activity, policy, or practice undertaken by his employer, or another employer with whom there is a business relationship with his employer, is a violation of an environmental law; (4) the employee reports, or threatens to report, the violation to a supervisor or to a public body of the employer; and (5) the employer acts in retaliatory manner because the employee reported, or threatened to report, a violation.[40] Merely alleging that a defendant or its employees violated a company policy, rather than a state environmental law, is insufficient.[41]

---

[37] *Gonzales v. J.E. Merit Constructors, Inc.*, 263 F.3d 162, 2001 WL 803545, at *2 (5th Cir. 2001) (citing *Powers v. Vista Chem. Co.*, 109 F.3d 1089, 1095 (5th Cir. 1997)); *Bain v. Ga. Gulf Corp.*, 462 F. App'x 431, 433 (5th Cir. 2012); *Walter v. BP Am., Inc.*, No. 12-177, 2014 WL 1796676, at *19 (E.D. La. May 6, 2014) (citing *Myers v. BP Am., Inc.*, No. 08-168, 2010 WL 3878920, at *6 (W.D. La. Sept. 28, 2010) (citing *Gonzalez*, 2001 WL 803545, at *2)), *aff'd*, 593 F. App'x 405 (5th Cir. 2015).

[38] A LEWA claim is distinct from a general whistleblower claim under LA. REV. STAT. § 23:967. *See, e.g.*, *Walter*, 2014 WL 1796676, at *19 (noting that § 30:2027 does not require an actual violation of state law to be actionable, as does § 23:967). A § 23:967 claim requires a plaintiff to establish that (1) the employer committed an actual violation of a state law through a prohibited workplace act or practice; (2) the plaintiff advised the employer of the violation; (3) plaintiff then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) plaintiff experienced a reprisal as a result of his refusal to participate in the unlawful practice or threat to disclose the practice. *Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. App. 4 Cir. 2004); *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 158 So. 3d 826 (La. 2015) (noting plaintiff must allege workplace conduct constituting an actual violation of state law to bring an action under § 23:967); *Ware v. CLECO Power LLC*, 90 F. App'x 705, 709 (5th Cir 2004) (finding that plaintiff failed to state a claim under § 23:967 when he failed to "indicate which state law, if any, was violated"); *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015); *Malin v. Orleans Par. Comm'ns Dist.*, 718 F. App'x 264, 273 (5th Cir. 2018) (noting that employee must allege that his employer retaliated for reporting an actual violation of state law).

[39] The term "good faith," as used in § 30:2027, means an employee is acting with an honest belief that a violation of an environmental law, rule, or regulation occurred. *Borcik v. Crosby Tugs, L.L.C.*, 858 F.3d 936, 937 (5th Cir. 2017) (per curiam) (quoting *Borcik v. Crosby Tugs, L.L.C.*, 222 So. 3d 672 (La. 5/3/2017)).

[40] *Walter*, 2014 WL 1796676, at *19 (citing *Collins v. Louisiana*, 118 So.3d 43, 49 (La. App. 1st Cir. 2013)).

[41] *Chiasson v. City of Thibodaux*, 347 F. Supp. 2d 300, 312 (E.D. La. 2004) (citing *Fondren v. Greater New Orleans Expressway Comm'n*, 871 So. 2d 688, 691 (La. App. 5th Cir. 2004)).

10

Plaintiff's proposed Second Amended Complaint does not add any new parties or claims. Instead, it revises certain allegations from his original complaint and adds new allegations to support his claim for violation of Louisiana environmental laws, which he asserts falls outside of the preemptive scope of the federal regulations.  For instance, Plaintiff originally alleged:

6.

From October 2024 to August 2024[, Plaintiff] generated condition reports related to violations of plant procedures directly related to radiological safety. These include concerns about adequacy of air samples, unqualified workers, and falsification of records.

. . . .

8.

In early 2025, [Plaintiff] discovered and reported multiple environmental and public safety violations, including:  a potential unmonitored release of radioactive water . . . ; the use of radiation detection equipment by unqualified personnel; and a chilled work environment that discouraged the filing of condition reports.

. . . .

17.

Entergy violated the [LEWA] by retaliating against him for disclosing to his supervisor and to a public body, the above mentioned safety violations, policies and/or practices that he reasonably believed are violations of environmental laws, rules, or regulations.

ECF No. 1-2.  In the First Amended Complaint, Plaintiff alleged:

6. Plaintiff's claims do not arise from radiological safety, nuclear reactor operations, or compliance with Nuclear Regulatory Commission regulations.

7. Plaintiff does not seek to enforce federal nuclear law, interpret NRC regulations, or challenge radiological safety determinations.

8. Plaintiff's protected activity consisted of reporting non-radiological environmental and workplace safety violations regulated under state law and OSHA.

**SPECIFIC CONDITION REPORTS**

9. On Feb 26, 2025, Plaintiff filed CR-WF3-2025-0728 citing EN-RP-501, EN-RP-503, EN-FAP-RP-011 non-compliance.

10. EN-RP-501 (Respiratory Protection Program) applies to both radiological and non-radiological hazards and references OSHA 29 C.F.R. § 1910.134.

11. EN-RP-504 (Breathing Air) ensures compliance with OSHA Grade D air requirements.

12. EN-FAP-RP-011 requires designation of a Respiratory Program Administrator.

13. This Condition Report reported that the RP Manager stated in a meeting that she would not follow the procedure to designate a Respiratory Program Administrator based on her belief that she believed that the policy was going to be revised in the future.

14. An ethics complaint was filed against Plaintiff for reporting what the RP Manager said at the meeting as being a safety violation.

15. On Apr 1, 2025, Plaintiff filed CR-WF3-2025-01247 in which he reported that the PR Supervisor improperly issued lead respiratory protection permit (RPP), which referenced unapproved radioactive work permit (RWP) 2025-1404.

16. On Apr 2, 2025, at the morning meeting the RP Supervisor in charge of the meeting [v]erbally harassed Plaintiff because he submitted this safety CR, concerning unsafe work practices involving lead contamination.

17. This CR documented that Entergy authorized work in an enclosed area involving lead-containing materials without proper sequencing and approval of required respiratory protection controls.

18. Plaintiff prevented work from proceeding under an operationally invalid Respiratory Protection Permit with the intent to protect workers from lead exposure.

19. Lead is a toxic heavy metal regulated under OSHA's Lead Standard, 29 C.F.R. § 1910.1025, and applicable Louisiana workplace safety and environmental laws.

20. The hazard reported involved chemical and industrial hygiene exposure, not radiation, radioactive materials, or nuclear safety.

21. The respiratory protection requirements at issue applied to non-radiological airborne hazards, including lead, and were governed by OSHA standards and Entergy procedures expressly covering non-radiological hazards.

22. Plaintiff's CR identified a procedural violation that increased the risk of employee exposure to a regulated environmental contaminant and undermined lawful compliance obligations.

23. The Condition Report did not concern NRC dose limits, reactor safety, or radiological controls.

12

24. Plaintiff reasonably believed Entergy's conduct violated environmental and workplace safety laws intended to prevent toxic exposure and protect employee health.

25. Lead contamination presents a risk of environmental release and contamination beyond the immediate workplace, implicating environmental protection concerns in addition to employee health and safety.

. . . .

37. Plaintiff's disclosure regarding lead contamination and improper respiratory protection constituted a distinct protected activity separate from any radiological or nuclear-safety disclosures made to federal regulators. The retaliatory acts alleged herein were triggered by Plaintiff's reporting of non-radiological environmental hazards governed by OSHA and Louisiana law, and not by any NRC-related communications.

ECF No. 22. In the proposed Second Amended Complaint, Plaintiff modifies certain allegations

of the First Amended Complaint and now alleges, among other things:

**Nature of Plaintiff's Protected Activity**

8.  Plaintiff's claims do not arise from radiological safety, nuclear reactor operations, NRC dose limits, or interpretation of federal nuclear regulations.

9.  Plaintiff does not seek to enforce federal nuclear law or challenge NRC determinations.

10.  Plaintiff's protected activity concerned non-radiological environmental contamination risks involving lead, a regulated hazardous contaminant.

**Lead Contamination and Environmental Risk**

11. On February 26, 2025, Plaintiff filed Condition Report CR-WF3-2025-00728 regarding non-compliance with Entergy's Respiratory Protection Program requirements.

12.  On April 1, 2025, Plaintiff filed Condition Report CR-WF3-2025-01247 concerning authorization of work involving disturbance of lead-containing materials in an enclosed industrial area under an operationally invalid Respiratory Protection Permit. This Condition Report expressly stated that the respiratory protection was not required for radiological purposes.

13.  The reported work involved the removal and disturbance of lead-containing materials capable of generating airborne particulate contamination.

13

14.   Lead is a toxic heavy metal and a regulated hazardous contaminant under Louisiana environmental regulatory schemes.

15.   Disturbance of lead-containing materials without proper containment, sequencing, and respiratory controls creates a risk of airborne particulate release and environmental contamination beyond the immediate work location.

16.   The work occurred within an industrial structure equipped with ventilation and air handling systems capable of exchanging air beyond the immediate workspace, creating a reasonable risk that airborne lead particulate could migrate beyond the enclosed work area.

17.   Plaintiff further reasonably believed that improper sequencing, handling, or disposal of disturbed lead-containing materials created risk of environmental release through ventilation pathways, ingress and egress points, or waste management processes.

**Specific Environmental Laws Implicated**

18.   At the time he filed his Condition Reports, Plaintiff reasonably believed that the authorization and performance of work involving disturbance of lead-containing materials without proper containment, sequencing, and emission controls implicated and violated Louisiana environmental law, including the Louisiana Environmental Quality Act, La. R.S. 30:2001 et seq., and regulations promulgated by the Louisiana Department of Environmental Quality under LAC Title 33 governing the emission of hazardous air pollutants, control of particulate matter, handling and disposal of hazardous contaminants, and protection of ambient air quality. Plaintiff reasonably believed that the disturbance of lead-containing materials under the circumstances described created a risk of unauthorized release of a regulated contaminant into the environment in contravention of those statutory and regulatory requirements. Plaintiff reasonably believed that authorizing work involving lead disturbance without properly implemented respiratory and containment controls created a risk of unlawful emission or release of a regulated contaminant into the ambient air and surrounding environment in violation of Louisiana environmental law.

ECF No. 31-2.  Plaintiff argues that his proposed Second Amended Complaint makes clear that his protected activity involved reports of lead environmental contamination risks in violation of Louisiana environmental laws, specifically laws governing lead respiratory protection and disturbance of lead-containing materials in an enclosed area.  *See* ECF No. 31-1 at 4.

In Opposition, Defendant argues that the Second Amended Complaint is insufficient

14

because it cites generally to Louisiana's Environmental Quality Act rather than to any specific statute or regulation within same. Contrary to Defendant's assertion, however, while citation to the specific statute involved may be required by Rule 8 when a plaintiff is pursuing a negligence *per se* theory,[42] as Judge Ashe recently explained, courts have consistently rejected the notion that the LEWA requires an employee to identify a particular law he believes the employer's practice violates.[43] The purpose of the LEWA (to protect employees from retaliatory action or other adverse employment action by employers for reporting possible environmental violations) would be frustrated if a plaintiff were required to specify the environmental law, rule or regulation that was violated.[44] Further, to require a plaintiff to know specifically what law is being violated would render the terms "good faith" and "reasonably believe" superfluous as these requirements would serve no purpose if the employee had to know exactly what provision of the law was being violated.[45]

Defendant also argues that the allegations in Plaintiff's Second Amended Complaint are

---

[42] *Francois v. Diamond Offshore Co.*, No. 11-2956, 2013 WL 12230925, at *2 (E.D. La. Mar. 4, 2013) (Morgan, J.) (citing *In re Oil Spill by the Oil Rig DEEPWATER HORIZON*, 835 F. Supp. 2d 175, 182 (E.D. La. 2011) ("[T]he complaints fail to plead any specific statutes on which the negligence per se claims are based; therefore, those claims are dismissed."); *In re Oil Spill by the Oil Rig DEEPWATER HORIZON*, 2011 U.S. Dist. LEXIS 113424, at *36 (E.D. La. Sept. 30, 2011) (Barbier, J.) ("[Plaintiffs' negligence per se claim] requires clarification to give notice to Defendants of which regulations are claimed to be violated (and permit a determination of whether the elements of negligence per se are satisfied). Plaintiffs' references to [voluminous sections of] the Code of Federal Regulations does not fulfill this requirement."); *ADT Security Servs., Inc. v. Swenson*, 687 F. Supp. 2d 884, 895 (D. Minn. 2009); *Holler v. Cinemark USA, Inc.*, 185 F. Supp. 2d 1242, 1244 (D. Kan. 2002)).

[43] *Burch v. Holcim US, Inc.*, No. 24-1165, 2025 WL 721210, at *5 (E.D. La. Mar. 5, 2025) (citing *Collins v. State ex rel. Dep't of Nat. Res.*, 118 So. 3d 43, 49 (La. App. 1st Cir. 2013) ("To require a plaintiff to know specifically what law is being violated would seem to render the 'good faith' and 'reasonably believe' portions of the law superfluous."); *Arceneaux v. Genesis Energy, LLC*, 2016 WL 6680360, at *4 (E.D. La. Nov. 10, 2016); *Roberts v. Fla. Gas Transmission Co.*, 447 F. App'x 599, 602 (5th Cir. 2011)); *Roberts*, 447 F. App'x at 602 (stating that the failure to identify any law, rule, or regulation allegedly violated is not dispositive, a complaint regarding an employment practice that might have some hypothetical consequence on the environment does not amount to a reasonable belief that the practice is against the law).

[44] *Burch*, 2025 WL WL 721210, at *5 (citing *Collins*, 118 So. 3d at 49). *But see Barber v. Marine Drilling Mgmt., Inc.*, No. 01-1986, 2002 WL 237848, at *9 (E.D. La. Feb. 15, 2002) (Porteous, J.) (citing *Bernofsky v. Tulane*, 962 F. Supp. 895, 907 (E.D. La. 1997) (Berrigan, J.)) for the proposition that, to state a claim under § 30:2027, the employee must believe the conduct violates a specific environmental law, rule, or regulation.

[45] *Arceneaux v. Genesis Energy, LLC*, No. 16-14612, 2016 WL 6680360, at *4 (E.D. La. Nov. 10, 2016) (Lemmon, J.).

inconsistent with both his earlier allegations and the condition reports referenced in the complaint and attached to their motions to dismiss as ECF No. 23-1, 23-2.  However, a plaintiff is allowed to plead allegedly inconsistent factual allegations in a complaint.[46]  And while the Court may consider the attachments to the motion to dismiss because same are referred to in the complaint and central to the plaintiff's claims, it is not entirely clear that the reports are inconsistent.  One condition report appears to address non-compliance with company policy rather than environmental regulations (ECF No. 23-1), but the other appears to address the need for respiratory protection gear while conducting lead removal (ECF No. 23-2).

In deciding whether claims in an amended complaint are futile, the Court may not deny the motion for leave to amend "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[47]  The Court limits its inquiry to whether the plaintiff is entitled to offer evidence to support claims and does not address whether the plaintiff will ultimately prevail on the merits.[48]  At this point, it is not clear that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  To the extent Plaintiff's proposed Second Amended Complaint fails to provide details underlying the basis of his claim (i.e., the particular alleged statutory violation at issue in his reports), that information may be discerned through a Rule 12(e) motion or discovery.  Although Defendant may ultimately establish that the condition reports address only radiological concerns, without any further evidence in relation to the reports, at this point and based on the face of at least one report, it appears Plaintiff is reporting a lead compliance issue.  Allowing Plaintiff the opportunity to amend his complaint

---

[46] FED. R. CIV. P. 8(d)(3); *Collins v. Dep't of the Treasury*, 83 F.4th 970, 983 n.14 (5th Cir. 2023) (citing *Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2013)).  If, however, the factual allegations are made without evidentiary support in violation of Rule 11(b)(3), Rule 11(c) authorizes imposition of sanctions.

[47] *Stripling*, 234 F.3d at 873 (internal quotations and citations omitted).

[48] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).

provides him with a final  chance to "plead his best case" before asking Judge Milazzo to rule on the motion to dismiss.[49]

## IV.    **CONCLUSION**

Accordingly,  for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 31) is GRANTED.

New Orleans, Louisiana, this ___19th___ day of March, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[49] *See Louisiana v. Bank of Am. Corp.,* No. 19-638, 2020 WL 3966875, at *2 (M.D. La. July 13, 2020) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)); *see also Biwen Liang v. Home Reno Concepts LLC*, No. 17-3503, 2018 WL 1401801, at *3 (E.D.N.Y. Mar. 19, 2018) ("It is a far better conservation of judicial and party resources to permit the amendment . . . and let any order on a motion to dismiss determine the facial validity of the RICO claim.").